UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-cv-735-RGJ

YUSIMI GONZALES MORALES                                                           Plaintiff

v.

COVIDIEN SALES LLC, et al.[1]                                                      Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (the "Motion") [DE 17]. Briefing is complete. [DE 18; DE 22]. The matter is ripe. For the reasons below, the Court converts Defendant's Motion from a motion to dismiss to a motion for summary judgment and **GRANTS** it.

### I.   BACKGROUND

On May 26, 2017, Dr. Franklin Delacruz ("Delacruz"), a surgeon at Hardin Memorial Hospital ("Hospital"), performed a hysterectomy on Ms. Morales ("Plaintiff"). [DE 18 at 96; DE 18-4 at 123]. As he was suturing her wound after surgery[2], "the tip of the needle in the Endo Stich device broke off" inside her. [DE 1 at 4]. Delacruz decided not to retrieve the needle. [DE 18-4 at 123 ("[A]nd I decided not to proceed, remove the—because it was more danger. At that point, it would have put her in more danger to try to dig . . . ")].

---

[1] In December 2018, the Court granted Plaintiff's Voluntary Stipulation of Dismissal, dismissing Defendants Hardin County d/b/a Hardin Memorial Hospital and Dr. Franklin O. Delacruz. [DE 16].
[2] Delacruz sutured her wound using two Covidien products (the "Products"): the Endo Stich Suturing Device ™ and the V-Loc Wound Closure Reload ™. [DE 1 at 4].

1

On April 25, 2018, Plaintiff filed a proposed complaint against the Hospital and Delacruz under the Medical Review Panel Act ("MRPA").[3] [DE 18-3]. The MRPA governed "[a]ll malpractice and malpractice-related claims against a health care provider" and required that all such claims "shall be reviewed by a medical review panel." KRS 216C.020 (1).

In August 2018, Plaintiff deposed Delacruz. During his deposition, Delacruz testified that he was using the Products as intended when the "needle tip broke." [DE 18-4 at 123]. He also testified about what he told Plaintiff on May 27, 2017, the day after the surgery. *Id.*

> Q    What did you tell Yusimi Gonzales after the surgery about the needle tip being left inside her?
>
> A    I explain her this: size of the needle, you know, that was left in there, so—because I've already seen the radiology report, and I decided not to proceed, remove the—because it was more danger. At that point, it would have put her in more danger to try to dig this—her surgery and plus the organ—close—adjacent to that, and it was much better to leave it in place, and I didn't expect for her to have any side effect beside that she have a needle in that area.

*Id.*

On November 8, 2018, Plaintiff filed her complaint (the "Complaint") against Defendant. [DE 1]. Defendant then filed the Motion to Dismiss [DE 17], Plaintiff responded [DE 18], and Defendant replied [DE 22]. Defendant did not attach exhibits to the Motion or its Reply. Plaintiff, on the other hand, attached eleven exhibits to her Response, including MRPA and FDA records [DE 18-2, 18-3, 18-5, 18-6, 18-7, 18-8, 18-9, 18-10, 18-11] and excerpts from Delacruz's deposition [DE 18-4].

---

[3] In *Commonwealth of Kentucky v. Claycomb by & Through Claycomb*, the Kentucky Supreme Court declared the MRPA void as unconstitutional. 566 S.W.3d 202, 218 (Ky. 2018), reh'g denied (Feb. 14, 2019).

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

## III. DISCUSSION

Defendant argues that the Court should dismiss the Complaint for two reasons: 1) "Plaintiff's claims are time-barred by the applicable statute of limitations because she filed this action more than one year after discovering her alleged injuries from the Products"; and 2)

"Plaintiff's vague and unspecified Amended Complaint fails to satisfy the baseline pleading requirements of Federal Rules of Civil Procedure 8 and 12 . . . The few facts Plaintiff does plead fail to identify a defect in the Products and fail to show that some alleged defect in the Products proximately caused Plaintiff's injuries." [DE 17-1 at 87-88].

Plaintiff disagrees. Plaintiff argues that the statute of limitations should run not from May 26, 2017, the date of the injury, but from August 10, 2018, "[t]he first date upon which [she] could have reasonably discovered she was possibly dealing with a products liability claim in addition to or instead of a medical malpractice claim against Dr. Delacruz." [DE 18 at 98-99]. Plaintiff further argues that she has satisfied the pleading requirements of FRCP 8 and 12 and has, in fact, identified a defect in the needle. *Id.* at 108 ("The needle broke! That's how it deviated from its intended design! Would it make more sense to Covidien in Russian? сломалась игла").

Although Plaintiff attached eleven exhibits to her Response, neither party addressed whether Defendant's Motion should be converted to one for summary judgment. As detailed below, the Court finds that Defendant's motion to dismiss should be converted to a motion for summary judgment and that, under the summary judgment standard, Plaintiff's claims against Defendant are time-barred.[4]

### A.  Conversion from Motion to Dismiss to Motion for Summary Judgment

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are

---

[4] Because the Court finds that Plaintiff's claims are time-barred, it need not consider whether Plaintiff has satisfied the pleading requirements of FRCP 8 and 12.

central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Generally, before *sua sponte* converting a motion to dismiss to one for summary judgment, the Court must "afford the party against whom *sua sponte* summary judgment is to be entered ten-day's notice and an adequate opportunity to respond." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (quoting *Yahson v. Gregory*, 737 F.3d 547, 552 (6th Cir. 1984)); *See Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir.1998) ("Whether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case"). That said, a party is not prejudiced by conversion if the party against whom summary judgment is entered submitted the evidence used to rule against it. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 614 (6th Cir. 2009) ("That is especially true in this case, where Hensley Manufacturing itself submitted . . . [the]. . . evidence . . . to the court. It cannot now complain that the district court considered what it had asked the court to consider."); *See Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir.1993) ("[A] party cannot raise for the first time on appeal an argument that she was surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion").

By attaching eleven exhibits to her Response, Plaintiff has presented materials outside the pleadings. Plaintiff has waived any argument that she was not on notice that the motion to dismiss might be converted to a motion for summary judgment.[5] As a result, the facts and circumstances of this case suggest that Plaintiff is unlikely to be surprised by the conversion of the motion to

---

[5] The Court further notes that Plaintiff cannot claim surprise because, as shown in her Response, she understands FRCP 12(d): "Additionally, *Twombly* and *Iqbal* do not suspend FRCP 12(d)'s requirement that motions to dismiss relying on facts outside the pleadings be treated as motions for summary judgment. [DE 18 at 108].

5

dismiss into a motion for summary judgment. The Court therefore converts the pending motion to dismiss into one for summary judgment.

**B. Statute of Limitations**

Personal injury actions "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. Ann. § 413.140 (West). An action accrues when a plaintiff "has knowledge of sufficient facts to state a cause of action." *Hazel v. General Motors Corp.*, 863 F.Supp. 435, 438 (W.D.Ky.1994). "Generally, this means that the plaintiff must file suit within one year of the alleged injury." *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002) (citing *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky.1972)). "However, Kentucky law also provides for an exception to this general rule through what is known as the 'discovery rule.'" *Id.*

Under the "discovery rule," a cause of action "will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Hazel*, 863 F.Supp. at 438. In other words, "the discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010); *See Hazel*, 863 F.Supp. at 438–39 (finding claims were time-barred) ("Plaintiff knew that a fuel-fed automobile fire caused his injuries . . . the injury and the instrumentality causing the injury were obvious. Thus, though Plaintiff surmised all the relevant facts, he may not have perceived that a design defect was the cause of his injury . . . A statute of limitations, however, begins to run from the date of discovery of the injuries and what or who was responsible for them, not from the date the plaintiff discovered that he had a cause of action"); *See Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 713 (2000) (finding

6

claims were not time-barred) ("A legally recognizable injury does not exist until the plaintiff discovers the defendant's wrongful conduct. Because Appellant's injury was not readily apparent until the discovery of the piece of uterine probe, she was unaware that she had a viable claim for medical malpractice"); *See Roberts v. Stryker Corp.*, No. CIV.A. 10-116-HRW, 2011 WL 2912697, at *3 (E.D. Ky. July 18, 2011) (finding claims were not time-barred) ("In the present case, Plaintiff had prior shoulder problems and continued having shoulder problems after the surgery at issue. Plaintiff . . . had absolutely no reason to associate those problems with the use of a pain pump or to suspect that the pain pump was somehow defective"). "The discovery rule . . . was developed because an injured party should be allowed to have his day in court when his injury was of an inherently unknowable nature." *Faulkner v. ABB Inc.*, No. 5:08CV-212-R, 2011 WL 1225697, at *2 (W.D. Ky. Mar. 30, 2011) (quoting *Louisville Trust Co. v. Johns–Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky.1979) (internal quotations omitted).

Defendant argues that "Plaintiff's claims are time-barred by the applicable statute of limitations because she filed this action more than one year after discovering her alleged injuries from the Products." [DE 17-1 at 87]. Plaintiff disagrees and advances two arguments in support of her position.

Plaintiff first argues that the statute of limitations on her claims were tolled when she filed her proposed complaint under the MRPA. [DE 18 at 97-98]. But the MRPA only governed and tolled "malpractice and malpractice-related claims against a health care provider." As a result, Plaintiff's product liability claim, governed by the Kentucky Product Liability Act and not included in her proposed complaint, was not tolled.

Plaintiff next argues that, under the discovery rule, "[t]he first date upon which Plaintiff could have reasonably discovered she was possibly dealing with a products liability claim in

7

addition to or instead of a medical malpractice claim against Dr. Delacruz was August 10, 2018." [DE 18 at 98-99]. *Fluke* says otherwise. 306 S.W.3d at 61. There, three electricians were injured in an explosion at a coal plant when the voltage meter they used to check the circuit breakers erroneously displayed that there was no electricity flowing to them. *Id.* at 57. After the accident, the U.S. Department of Labor Mine Safety and Health Administration (MSHA) took the voltage meter, tested it, and determined that it was working properly at the time of the explosion. *Id.* The electricians filed a negligence suit against the owner of the coal plant. *Id.* More than a year after the explosion, they amended their complaint to name the Fluke Corporation, the manufacturer of the voltage meter, as a defendant. *Id.* at 58. Fluke moved for summary judgment, arguing that the claim against it was time-barred. *Id.* at 59. The trial court granted summary judgment, and the Court of Appeals vacated it. *Id.*

In reinstating the trial court's order of summary judgment, the Kentucky Supreme Court found that the discovery rule did not apply because the plaintiffs' "injuries were immediately apparent" and they knew or should have known that the voltage meter was not working properly. *Id.* at 60-61 ("And they were aware at the time of the explosion that [they] tested, or should have tested, for voltage with a voltage-measuring instrument, yet, an electrical explosion occurred. So despite their statements that they had not previously heard of voltage meters malfunctioning and trusted Fluke brand products, they should have reasonably suspected that the voltage meter was not working properly and investigated this possibility"). The Kentucky Supreme Court further found that the plaintiffs' obligation to conduct a "prompt" and "independent investigation" of the voltage meter as a "possible cause" was obviated neither by the MSHA's continued possession of the voltage meter nor its determination that the voltage meter was working properly. *Id.*

Applying *Fluke* here, Plaintiff knew on May 27, 2017 that a needle was left inside her.

8

[DE 18 at 96; DE 18-4 at 123]. Because she knew a needle was left inside her, she was aware of her "injury" and the "offending instrumentality." *Fluke*, 306 S.W.3d at 60. For that reason, the statute of limitations on her product claim began to run on May 27, 2017. Furthermore, the onus was on her to conduct a "prompt" and "independent investigation" of the instrument to determine whether the needle, not Delacruz, was a possible cause of her injury. *Id.* at 61; *See McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999) ("A person who has knowledge of an injury is put on 'notice to investigate' and discover . . . the identity of the tortfeasor"). And although Plaintiff suggests that she would not have been able to discover the identity of the manufacturer before she deposed Delacruz,[6] the discovery rule is not designed "to assist those victims, such as the Plaintiff, who can readily ascertain the causal relationship, but cannot readily ascertain the identity of the alleged tort-feasor." *Jeffries v. Thermal Fischer Sci.*, No. CIV.A.1:07CV-192-JHM, 2009 WL 3807103, at *3 (W.D. Ky. Nov. 12, 2009) (quoting *Simmons v. S. Cent. Skyworker's, Inc.*, 936 F.2d 268, 270 (6th Cir. 1991) (internal quotation marks omitted). The Kentucky Supreme Court has declined "to extend application of the discovery rule to cases not involving latent injuries, latent illnesses, or professional malpractice." *Fluke*, 306 S.W.3d 55, 56 (Ky. 2010). Plaintiff had until May 27, 2018 to file her claim against Defendant. Because she filed her suit after May 27, 2018, the court enters summary judgment against her.

---

[6] Plaintiff's surgery was in May 2017, and she filed her proposed complaint in April 2018. Plaintiff asserts that she could not depose Delacruz until August 2018. But, as a practical matter, even if she was not required to file a proposed complaint through the MRPA, she still would not have been able to depose Delacruz a month after she filed her complaint as she would have been required to wait for the opposing party to answer before commencing discovery. Fed. R. Civ. P. 26(a) advisory committee's note to 1946 amendment ("The present rule forbids the plaintiff to take a deposition, without leave of court, before the answer is served").

## IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS AS FOLLOWS**:

(1) Defendant's Motion to Dismiss [DE 17] is **CONVERTED** to a motion for summary judgment and **GRANTED**.

(2) The Court will enter separate judgment.